IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| MCKESSON CORPORATION and SUBSIDIARIES, | ) ) ) | Case No. 3:25-cv-1102 |
| Plaintiff, | ) ) | Judge David C. Godbey |
| v. | ) ) ) | |
| UNITED STATES OF AMERICA | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

**APPENDIX TO DEFENDANT'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

This appendix is submitted in support of the Defendant's Cross-Motion for Summary

Judgment, filed contemporaneously with this document.

[*Signature on following page*]

Dated: June 5, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

*/s/ Moira E. Goodwin*
MOIRA E. GOODWIN
DC Bar No. 1780293
DANIEL B. CAUSEY, IV
SC Bar No. 104035
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-718-7056 (MEG)
202-307-1427 (DBC)
202-514-6866 (fax)
moira.e.goodwin@usdoj.gov
daniel.b.causey@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that, on June 5, 2026, I filed with the above document with the Court using the

Court's CM/ECF system, which will serve counsel of record for Plaintiff.

*/s/ Moira E. Goodwin*
MOIRA E. GOODWIN
DC Bar No. 1780293
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice

**EXHIBIT 1**

*Sample McKesson Cost-Sharing Agreement*

*EXECUTION VERSION*

### RESEARCH AND DEVELOPMENT COST SHARING AGREEMENT – BAKER APS

Research and Development Cost Sharing Agreement, dated as of November 1, 2001, between McKesson Automation Systems Inc. (formerly known as McKesson Automated Prescription Systems, Inc.), a Louisiana corporation ("Baker APS"), and McKesson Information Solutions Holdings Ltd. (formerly known as McKesson HBOC (Holdings) Limited), a company organized and existing under the laws of Ireland with its principal place of business in Bermuda ("Irish Parent").

## RECITALS

WHEREAS, Baker APS and Irish Parent each engage directly or indirectly in the business of designing, developing, manufacturing and marketing software health care products;

WHEREAS, Baker APS and Irish Parent desire to pool their respective resources for the purpose of conducting research and development with respect to the design and development of software health care products, including outpatient healthcare solutions that help facilities re-engineer their medication dispensing and pharmacy workflow process and to share the risks and costs of such research and development activity and the intangible property that is developed;

WHEREAS, Baker APS and Irish Parent agree that a cooperative effort is desirable in order to minimize duplication of effort, overall research and development risks and expenditures, as well as to maximize the results of such efforts;

WHEREAS, Baker APS and Irish Parent intend to allocate ownership and rights to, as well as rights to exploit, the proprietary intangibles developed in accordance with this Agreement;

WHEREAS, pursuant to a license agreement, dated the date of this Agreement, between Baker APS and Irish Parent, Baker APS granted to Irish Parent the right and license to use certain existing intangibles of Baker APS (the "License Agreement");

WHEREAS, pursuant to a license agreement, dated the date of this Agreement, between Irish Parent and McKesson Information Solutions Ireland Ltd. (formerly known as McKesson HBOC (Ireland) Limited), a company organized and existing under the laws of Ireland ("Irish Manufacturing Co."), Irish Parent granted to Irish Manufacturing Co. the right and license to use the intangibles licensed under the License Agreement and certain of the intangibles developed under this Agreement, including without limitation the right to manufacture products containing such intangibles;

WHEREAS, pursuant to a copyrighted article sales agreement, dated the date of this Agreement, between Irish Manufacturing Co. and Baker APS, Irish Manufacturing Co. agreed to sell, and Baker APS agreed to purchase, market and resell or license the products manufactured by Irish Manufacturing Co. containing such intangibles;

WHEREAS, each of Irish Parent and Irish Manufacturing Co. are affiliates of Baker APS;

CWT\DCLIB1\55599.7

McKessonCSA0001

USA APP000001

NOW, THEREFORE, in consideration of the mutual covenants and undertakings in this Agreement, Baker APS and Irish Parent, intending to be legally bound, agree as follows:

## ARTICLE 1

## DEFINITIONS

Section 1.1    Definitions.    As used in this Agreement, the following terms have the meanings set forth, or incorporated by reference, in this Agreement:

"Affiliate" means any Person which controls, is controlled directly or indirectly by or is under common control with another Person.

"Aggregate Allocable Development Costs" means the sum of the Development Costs of Baker APS and Irish Parent for a Fiscal Year or part thereof, less Specific Development Costs.

"Assigned Developed Intangibles" means Developed Intangibles, expressly excluding any and all Retained Intangible Rights.

"Confidential Information" means any information disclosed by one party to the other pursuant to this Agreement which is in written, graphic, machine readable or other tangible form and is marked "confidential", "proprietary" or in some other manner to indicate its confidential nature or is otherwise known to be confidential information of the disclosing party. Confidential Information also may include oral information disclosed by one party to the other pursuant to this Agreement, *provided* such information is designated as confidential at the time of disclosure and is reduced to writing by the disclosing party within a reasonable time (not to exceed thirty (30) days) after its oral disclosure, and such writing is marked in a manner to indicate its confidential nature and delivered to the receiving party. All Developed Intangibles shall be considered Confidential Information of each party.

"Cost Share" of a party for a Fiscal Period means the proportionate amount of Aggregate Allocable Development Costs for such Fiscal Period, determined by applying the Aggregate Allocable Development Costs to the Cost Sharing Ratio.

"Cost Sharing Ratio" is defined in Section 3.3.

"Developed Intangibles" means any Intangible arising out of or constituting the results of the Research Program conducted by the parties, including any adaptations, modifications or works derived from Developed Intangibles; the term "Developed Intangibles" is intended to mean a "covered intangible" within Treas. Reg. § 1.482-7(b)4(iv).

"Development Costs" of a Person means all costs incurred by a party in connection with and properly allocable to the Research Program, plus all of the cost sharing payments it makes to other parties, plus all costs of protection of Developed Intangibles as described in Article 5, minus all of the cost sharing payments it receives from other parties within the meaning of Treas. Reg. § 1.482-7(d)(1). Development Costs include all direct and indirect costs and expenses incurred by a party for the conduct by it of the Research Program as well as the cost of any Developed Intangible or other intangible property licensed for a specified period from third

2

McKessonCSA0002

USA APP000002

parties as part of the Research Program. Development Costs are intended to include the following items: all operating expenses included in Treas. Reg. § 1.482-5(d)(3), other than depreciation or amortization expense, plus (to the extent not included in such operating expenses) as defined in Treas. Reg. § 1.482-5(d)(3) an arm's length rental charge of any tangible property made available for use in connection with the Research Program, and Development Costs are not intended to include costs relating to the development of hardware.

"Documentation" means user guides, operating manuals, and specifications, whether in print or machine readable media, supplied for use with the Developed Intangibles or any component of Developed Intangibles, including all additions, updates or modifications to Developed Intangibles.

"Effective Date" is the date on which the parties entered into this Agreement.

"Fiscal Period" means Fiscal Quarter or Fiscal Year.

"Fiscal Quarter" means each successive three month period ending on June 30, September 30, December 31 and March 31.

"Fiscal Year" means each twelve month period ending March 31.

"GAAP" means United States Generally Accepted Accounting Principles.

"Gross Revenues" means (i) all gross revenues from licenses and sales to Third Parties or the provision of services to Third Parties directly arising from the Developed Intangibles (including all updates to the Developed Intangibles), including without limitation sales of hardware and hardware-related services, by Irish Parent or one or more of their Affiliates, (ii) any recovery obtained in connection with protection of Developed Intangibles as described in Article 5, and (iii) gross revenues generated from the provision of services to Third Parties directly or indirectly arising out of, relating to or in connection with software products similar to the Developed Intangibles (including all updates to the Developed Intangibles), including without limitation sales of hardware and hardware-related services, if there is a reasonable expectation by the Person providing the services that such services will be provided in the future in connection with the Developed Intangibles, including its updates. Services include installation, maintenance, connect technology, outsourcing, application services provider services, remote processing services; and information technology consulting services, and all other services performed in connection with the Developed Intangibles, including updates to the Developed Intangibles.

"Infringement Notice" is defined in Section 5.3.

"Intangibles" means any and all technologies, procedures, processes, designs, inventions, discoveries, know-how, show-how and works of authorship, including without limitation, documentation, and all (i) copyrights and other rights in works of authorship, including without limitation Moral Rights, (ii) Patent Rights, (iii) trade secrets, and (iv) Confidential Information, and any other intellectual property rights constituting, embodied in or pertaining thereto.

"Irish Manufacturing Co." is defined in the recitals.

3

McKessonCSA0003

USA APP000003

"Irish Parent" is defined in the introductory paragraph.

"Irish Patent" means any patent that is issued in or is enforceable in Ireland.

"Moral Rights" means any right to claim authorship of a work, any right to object to any distortion or other modification of a work, and any similar right, existing under the law of any country in the world, or under any treaty.

"Patent Rights" means any and all legal, equitable and other rights enforceable in any jurisdiction or country of the world, arising from or associated with (i) issued, registered or granted patents, (ii) utility models and the like, and (iii) applications for patents, utility models and the like, pending before any relevant authority worldwide, including any additions, continuations, continuations-in-part, divisions, reissues or extensions based thereon, and including without limitation the right to file, apply for and prosecute through to grant any of the foregoing and all inventions or other patentable subject matter.

"Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, estate, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Research Program" is defined in Section 2.1.

"Retained Intangible Rights" means any and all legal, equitable and other rights, enforceable in any jurisdiction or country of the world other than Ireland, arising from or associated with (i) issued, registered or granted patents, (ii) utility models and the like, and (iii) applications for patents, utility models and the like, pending before any relevant authority worldwide, within any Developed Intangible, including any additions, continuations, continuations-in-part, divisions, reissues or extensions based thereon, and including without limitation the right to file, apply for and prosecute through to grant in any jurisdiction or country of the world other than Ireland, any of the foregoing and all inventions or other patentable subject matter.

"Specific Development Costs" is defined in Section 3.1.

"Term" is defined in Article 3.

"Third Party" means any Person other than Baker APS, Irish Parent or any of their Affiliates.

"Treas. Reg." means United States Treasury Regulation.

Section 1.2    Other Definitional Provisions.

(a)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, and section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

4

McKessonCSA0004

USA APP000004

(b)    The word "including" when used in this Agreement is deemed to be followed by the words "but not limited to".

## ARTICLE 2

## RESEARCH PROGRAM; DEVELOPMENT ACTIVITIES

Section 2.1    General. The parties shall combine those portions of their research and development efforts and share the resulting costs, risks and rights relating to the development and design of outpatient healthcare solutions that help facilities re-engineer their medication dispensing and pharmacy workflow process, and other such items as the parties agree from time to time, including both basic or experimental research and product-specific research, and including research relating to new product development or the improvement, adaptation or modification of existing products, the development of prototypes, and manufacturing and process technology, all of which the parties agree to make part of the joint research and development program as set forth on Schedule A to this Agreement, as amended from time to time (the "Research Program"). The parties intend that the arrangements set forth in this Agreement constitute a qualified cost sharing arrangement within the meaning of Treas. Reg. § 1.482-7(b).

Section 2.2    Acquired Intangibles. Any Intangibles of a third party may be added to the Research Program upon the acquisition by a party of such Intangibles by purchase, license, service agreement or otherwise. In such event, any amounts paid to acquire or otherwise use such intangibles shall be treated as an Intangible Development Cost of the party incurring the cost or expense in that accounting period in which the cost or expense is paid. Intangibles added to the Research Program pursuant to this Section 2.2 shall be considered Developed Intangibles.

Section 2.3    Operation of Research Program. The parties to this Agreement:

(a)    shall meet periodically to determine whether to include as part of the Research Program research and development activities performed by the parties after the Effective Date concerning designated products and their manufacturing, testing, assembling, and shipping, including, without limitation, basic research, product-specific development, creation of improvements, adaptations, or other modifications to existing products, and design or improvement of manufacturing processes; and

(b)    shall review periodically changes in economic conditions, the business operations and practices of the parties and the sales of products containing or exploiting Developed Intangibles by Baker APS and Irish Parent, to determine whether the Cost Sharing Ratio continues to be appropriate and consistent with the Agreement.

Section 2.4    Development Activities and Budget. At the beginning of each Fiscal Year, the parties (i) shall agree upon a budget for the research and development activities to be undertaken during such Fiscal Year, and (ii) shall prepare a development schedule for the activities to be undertaken including an allocation of the development responsibilities of each party, including, without limitation, the location where the development activities will occur. The budget and development schedule described in the preceding sentence shall be considered part of this Agreement. The parties may amend or modify the Research Program (including the

5

budget and development schedule therefor) at any time during the Fiscal Year as they shall agree.

## ARTICLE 3

## COST ALLOCATION

Section 3.1    Specific Development Costs. The sum of the Development Costs of Baker APS and Irish Parent for a Fiscal Period incurred with respect to any particular Developed Intangible which can be utilized solely by, or of benefit solely to, Baker APS or Irish Parent (each, a "Specific Development Cost") shall be allocated solely to the party to whom the particular Developed Intangible relates.

Section 3.2    Aggregate Allocable Development Costs.   The parties intend that the Aggregate Allocable Development Costs shall be borne by each party as of the Effective Date based upon the reasonably anticipated benefits to be derived by each party as a result of exploitation of the Developed Intangibles, in accordance with Treas. Reg. § 1.482-7(f)(3) and determined as described in Section 3.4 ("reasonably anticipated benefits" within the meaning of Treas. Reg. § 1.482-(e)(2)).

Section 3.3    Allocation to be Based on Benefits to be Derived by the Parties.   The parties acknowledge and agree that, as of the date of this Agreement, reasonably anticipated benefits are best measured by the ratio ("Cost Sharing Ratio") of (i) Gross Revenue derived from the business activities in which the Developed Intangibles are exploited by a party hereto bears to (ii) the total Gross Revenue derived from the business activities in which Developed Intangibles are exploited by both parties hereto.

Section 3.4    Calculating Reasonably Anticipated Benefits.

(a)    The estimate of reasonably anticipated benefits to be derived by each party as a result of exploitation of the Developed Intangibles and used to determine the Cost Sharing Ratio shall be based upon projections which shall include (i) a determination of the time period between the inception of the Research Project and the receipt of benefits, (ii) a projection of the time over which benefits will be received, and (iii) a projection of the benefits anticipated for each year in which it is anticipated that the Developed Intangibles will generate benefits and (iv) otherwise as provided in Treas. Reg. § 1.482-7(f)(3)(iv).

(b)    To the extent projections anticipate a significant variation among the parties hereto in the timing of their receipt of benefits from the exploitation of the Developed Intangibles, the anticipated benefits shall be based upon the present discounted value of such projected benefits to each party.

(c)    The parties shall review the projections used to calculate the ratio in which they share the Aggregate Allocable Development Costs to account for changes in economic conditions, the business operation and practices of the parties, and the ongoing development of Developed Intangibles under this Agreement.

6

McKessonCSA0006

USA APP000006

(d)     The projections referred to in this Section 3.4 shall be prepared by the parties jointly on no less than an annual basis.

Section 3.5     Initial Cost Sharing Ratio. The Aggregate Allocable Development Costs shall initially be shared among the parties as follows:

Baker APS     1%

Irish Parent     99%

Section 3.6     Calculations. The parties shall use a consistent method of accounting to measure costs and benefits, and shall translate foreign currencies on a consistent basis. All calculations of Development Costs and other amounts under this Article 3 shall be made on an accrual basis in accordance with GAAP, unless otherwise specifically set forth in this Agreement. In the event a party disputes any determination of whether an item should be included in Development Costs, the parties shall negotiate in good faith to resolve any such disputes.

Section 3.7     Documentation Requirements. Each party shall maintain documentation sufficient to establish that the requirements of Treas. Reg. § 1.482-7(j)(2)(i), including documentation regarding (i) the methodology and data used to establish projections of gross revenue and anticipated benefits as well as allocation described in this Article 3, as modified from time to time, (ii) the total amount of costs incurred pursuant to this Agreement, (iii) the costs borne by each party hereto, (iv) in the event any accounting method used to determine the costs and benefits of the Developed Intangibles differs from GAAP, an explanation of such differences, and (v) prior research relating to the Developed Intangibles.

Section 3.8     Participants; Reporting Requirements. The participants in this cost sharing agreement are Baker APS and Irish Parent. Each party hereto that is required to file a United States income tax return agrees to attach to such return a statement indicating that it is a participant in a qualified cost sharing arrangement, and listing the other controlled participants in the arrangement. Each such party also agrees to attach a similar statement to Schedule M of any Form 5471 or Form 5472 filed with respect to a party hereto that is not otherwise required to file a United States income tax return.

## ARTICLE 4

## STATEMENT OF DEVELOPMENT ACTIVITIES

## PAYMENT OF COST SHARE

Section 4.1     Statement of Development Activities. Within thirty (30) days following the close of any Fiscal Quarter (or more frequent accounting period, as agreed by the parties), Baker APS and Irish Parent shall furnish each other a written statement, certified by an officer, setting forth the Development Costs incurred by it during the Fiscal Quarter or other such period. Such statement shall be in sufficient detail to provide recipient with the amount and description of each category of cost, i.e., compensation, outside services, supplies, etc., incurred during the Fiscal Quarter or other such period. If the Development Costs of a party for any Fiscal Quarter

7

McKessonCSA0007

USA APP000007

or other such period are less than its Cost Share, such party shall make an interim payment in the amount of such difference promptly after receipt of such written statement (any such date, a "Payment Date").

Section 4.2    Settlement. If the Intangible Development Costs for any Fiscal Year of a party hereto are less than its Cost Share, such party shall make payment in the amount of the difference between such amounts to the other party hereto on the applicable Payment Date. Any amounts owed by one party to another under this Section 4.2 may be offset or netted against other indebtedness among the parties. To the extent desired by either Baker APS or Irish Parent, payments may be made in timely manner so as to avoid the imputation of interest under applicable tax laws, on payments owing to owing from a party pursuant to this Section 4.2.

Section 4.3    Calculations. All calculations under this Article 4 shall be made on an accrual basis in accordance with GAAP.

## ARTICLE 5

## DEVELOPED INTANGIBLES

Section 5.1    Ownership and Filings.

(a)    Legal Title to the Developed Intangibles. Baker APS and Irish Parent acknowledge and agree that legal title to the Developed Intangibles shall be allocated between the parties in accordance with the following terms:

(i)    Irish Parent shall hold legal and beneficial title to the Assigned Developed Intangibles, subject to the rights granted below. Legal and beneficial title to Assigned Developed Intangibles that are conceived or developed by employees of either party or of both parties shall be and remain in Irish Parent. Baker APS hereby acknowledges that, subject to the rights reserved by Baker APS pursuant to Section 5.2, Irish Parent owns all right, title, and interest in the Assigned Developed Intangibles, and Baker APS hereby assigns to Irish Parent all right, title and interest it may have or come to have in the Assigned Developed Intangibles. Baker APS shall execute any necessary and appropriate acknowledgement that Irish Parent is the legal and beneficial owner of its rights to the Assigned Developed Intangibles as defined in this Article 5, and at Irish Parent's expense shall execute such other documents and take such other actions as Irish Parent may reasonably request to secure for itself such rights.

(ii)    Baker APS shall hold legal and beneficial title to the Retained Intangible Rights. Legal and beneficial title to Retained Intangible Rights that are conceived or developed by employees of either party or of both parties shall be and remain in Baker APS. Irish Parent hereby acknowledges that Baker APS owns all right, title, and interest in the Retained Intangible Rights, and Irish Parent hereby assigns to Baker APS all right, title and interest it may have or come to have in the Retained Intangible Rights. Irish Parent shall execute any necessary and appropriate acknowledgement that Baker APS is the legal and beneficial owner of its rights to the Retained Intangible Rights as defined in this Article 5, and at Baker APS's expense shall execute such other documents and take such other actions as Baker APS may reasonably request to secure for itself such rights.

8

McKessonCSA0008

USA APP000008

(b)      <u>Perfection of Irish Parent Rights in Developed Intangibles</u>.  Irish Parent shall have the right to determine whether to file patent applications for all inventions or other patentable subject matter within the Assigned Developed Intangibles (but only with respect to Irish Patents) and copyright registrations for works of authorship or other copyrightable subject matter within the Assigned Developed Intangibles.  Irish Parent shall make its determination at the earliest practical time and shall notify Baker APS in writing of its decision to make any such filings.  In addition, Irish Parent shall consult with Baker APS regarding the content of such filings and shall send Baker APS a copy of any such filing and all correspondence with the applicable governmental offices.  If Baker APS requests in writing that Irish Parent makes an filing with respect to an item, and Irish Parent fails to notify Baker APS in writing of its intention to do so within thirty (30) days after receiving that request, or if Irish Parent fails to make such a filing within ninety (90) days after receiving that request or, if earlier, prior to thirty (30) days before the filing deadline, then Baker APS shall have the right to effect such a filing at its own expense.  The party that prepares and makes any filing shall bear the expenses of preparing, filing and prosecuting such filing and of paying any taxes, annuities or maintenance fees on the pending application and on any patent or copyright issued thereon.  The nonfiling party agrees to furnish at no charge all documents and other assistance reasonably requested for the purpose of the filings and prosecution of such filings.  All filings and any copyright registrations for works of authorship or other copyrightable subject matter within the Assigned Developed Intangibles or Irish Patents issued on inventions or other patentable subject matter within the Assigned Developed Intangibles shall be filed and held in the name of Irish Parent.

(c)      <u>Perfection of Baker APS Rights in Developed Intangibles</u>.  Baker APS shall have the right to determine whether to file patent applications for all inventions or other patentable subject matter within the Developed Intangibles (except with respect to any Irish Patents).  Baker APS shall make its determination at the earliest practical time and shall notify Irish Parent in writing of its decision to make any such filings.  In addition, Baker APS shall consult with Irish Parent regarding the content of such filings and shall send Irish Parent a copy of any such filing and all correspondence with the applicable governmental offices.  If Irish Parent requests in writing that Baker APS makes a filing with respect to an item, and Baker APS fails to notify Irish Parent in writing of its intention to do so within thirty (30) days after receiving that request, or if Baker APS fails to make such a filing within ninety (90) days after receiving that request or, if earlier, prior to thirty (30) days before the filing deadline, then Irish Parent shall have the right to effect such a filing at its own expense.  The party that prepares and makes a filing shall bear the expenses of preparing, filing and prosecuting such filing and of paying any taxes, annuities or maintenance fees on the pending application and on any patent issued thereon.  The nonfiling party agrees to furnish at no charge all documents and other assistance reasonably requested for the purpose of the filings and prosecution of such filings.  All filings and any patents (except for any Irish Patents) issued on inventions or any other patentable subject matter within the Developed Intangibles shall be filed and held in the name of Baker APS.

Section 5.2      <u>Rights to Use Developed Intangibles</u>.  Subject to the terms and conditions of this Agreement, Irish Parent hereby grants to Baker APS a non-exclusive, transferable, royalty-free right and license, with the right to grant and authorize sublicenses, in and under any Assigned Developed Intangibles, to practice, use and modify the Assigned Developed Intangibles in order to develop, use, make, have made, sell and otherwise distribute directly,

9

McKessonCSA0009

USA APP000009

products in Canada, *provided* each sublicense granted pursuant to this Section 5.2 shall be in writing and in a form reasonably acceptable to Irish Parent.

Section 5.3    Infringement.  If either party becomes aware of any actual or potential infringement or misappropriation of any Developed Intangible, then such party shall promptly notify the other party in writing of such infringement ("Infringement Notice").

Section 5.4    Protection of Assigned Developed Intangibles by Irish Parent.

(a)    Irish Parent, on behalf of itself and Baker APS, shall have the sole right to prosecute infringements of Assigned Developed Intangibles or infringement or misappropriation of any trade secret contained in Assigned Developed Intangibles throughout the world, and shall perform all actions and incur all costs which are deemed by Irish Parent to be necessary or appropriate to protect the Assigned Developed Intangibles in any jurisdiction in which such Assigned Developed Intangibles are or may be used, including without limitation seeking the advice of foreign legal counsel where necessary, to protect such rights.

(b)    If Irish Parent does not take reasonable actions to such end before the end of ninety (90) days from the issuance of an Infringement Notice or notifies Baker APS that it does not intend to prosecute such infringement, then (i) Baker APS shall have the sole right for sixty (60) days at its expense to prosecute such infringement and (ii) Irish Parent shall take all actions reasonably requested by Baker APS in such prosecution, subject to indemnification by Baker APS of Irish Parent.  If Baker APS does not take reasonable actions to prosecute such infringement to such end before the end of the sixty (60) day period or notifies Irish Parent that it does not intend to prosecute such infringement, then this Section 5.4 shall become applicable again such that Irish Parent has the primary right to prosecute such infringement.

Section 5.5    Protection of Retained Intangible Rights by Baker APS.

(a)    Baker APS, on behalf of itself and Irish Parent, shall have the sole right to prosecute infringements of Retained Intangible Rights, and shall perform all actions and incur all costs which are deemed by Baker APS to be necessary or appropriate to protect the Retained Intangible Rights in any jurisdiction in which such Retained Intangible Rights are or may be used, including without limitation seeking the advice of foreign legal counsel where necessary, to protect such rights.

(b)    If Baker APS does not take reasonable actions to such end before the end of ninety (90) days from the issuance of an Infringement Notice or notifies Irish Parent that it does not intend to prosecute such infringement, then (i) Irish Parent shall have the sole right for sixty (60) days at its expense to prosecute such infringement and (ii) Baker APS shall take all actions reasonably requested by Irish Parent in such prosecution, subject to indemnification by Irish Parent of Baker APS.  If Irish Parent does not take reasonable actions to prosecute such infringement to such end before the end of the sixty (60) day period or notifies Baker APS that it does not intend to prosecute such infringement, then this Section 5.5 shall become applicable again such that Baker APS has the primary right to prosecute such infringement.

Section 5.6    Protection of Know-How.  Each of Irish Parent and Baker APS shall consult with each other concerning prosecution of infringement or misappropriation of know-

10

McKessonCSA0010

USA APP000010

how not protected by Developed Intangibles and the allocation of costs or awards relating to such prosecution.

Section 5.7    Research Program License.  In order for Baker APS to participate in the Research Program, Irish Parent hereby grants to Baker APS a non-exclusive, royalty-free license during the term of this Agreement solely to use such Intangibles owned by or licensed to Irish Parent as are necessary or convenient for Baker APS to take part in the Research Program. The Intangibles licensed pursuant to this Section 5.7 may be used by Baker APS (together with Affiliates and contractors assisting Baker APS with the Research Program) solely in connection with the Research Program, and for no other purpose.

## ARTICLE 6

## DELIVERY OF DEVELOPED TECHNOLOGY

Section 6.1    Disclosure of Developed Intangibles.  Subject to the provisions of this Article 6, each party shall exercise reasonably diligent efforts to disclose and deliver to the other party the Developed Intangibles, to the extent not otherwise in such receiving party's possession, as promptly as practicable during the term of this Agreement. A delivery party shall exercise reasonably diligent efforts to ensure the accuracy of all Developed Intangibles provided but does not warrant that all such Developed Intangibles will be accurate in all respects.

Section 6.2    Developed    Intangible    Documentation.    All    embodiments    and reproductions of Developed Intangibles and related intellectual property and technology shall be in the English language and shall be in accordance with United States standards, measurements and practices. The costs of any translation of the Developed Intangibles and adaptation of it for a particular country shall be borne by the party desiring such translation.

Section 6.3    Delivery Restrictions.  No Developed Intangibles shall be delivered within the State of California unless such delivery is by means of remote telecommunications or unless the parties hereto are satisfied that such transfer shall not incur a sales or use tax liability. Any attempted transfer contrary to the terms hereof shall be void and of no effect. If the delivery is made by remote telecommunications, the parties shall keep a detailed contemporaneous log documenting each transmission by date, time, place, and the individual responsible for such transmission.

Section 6.4    Confidentiality.  Notwithstanding any failure to so mark it, all information included or embodied in the Documentation shall be deemed Confidential Information.

Section 6.5    Bearing of Risks; No Assurance of Success.  Each party conducting research and development shall be solely responsible to use commercially reasonable efforts to design and develop the products, devices and processes contemplated by the Research Program. No party makes a warranty or guarantee that such product or process design or development efforts will be successful or accomplished in a timely manner or that the Developed Intangibles will be commercially viable. No party hereto shall be liable to the other party hereto for failure to create Developed Intangibles in accordance with this Agreement. Notwithstanding anything to the contrary herein, each party shall bear its Cost Share regardless of whether any Developed

11

McKessonCSA0011

USA APP000011

Intangibles is in fact produced by the Research Program and regardless of whether the parties realize any income from any Developed Intangibles.

## ARTICLE 7

## CONFIDENTIAL INFORMATION

Section 7.1    Nondisclosure of Confidential Information.    Each party shall treat as confidential all Confidential Information of the other party, shall not use such Confidential Information except as set forth herein, and shall not disclose such Confidential Information to any third party except as may be reasonably required or permitted pursuant to this Agreement, and subject to confidentiality obligations at least as protective as those set forth herein. Without limiting the foregoing, each of the parties shall use at least the same degree of care which it uses to prevent the disclosure of its own confidential information of the like importance to prevent the disclosure of Confidential Information disclosed to it by the other party under this Agreement.

Section 7.2    Limitation of Liability.    Notwithstanding the above, neither party shall have liability to the other with regard to any Confidential Information of the other which:

(a)        was in the public domain at the time it was disclosed or becomes in the public domain through no fault of the receiver;

(b)        was known to the receiver, without restriction, at the time of disclosure as shown by the files of the receiver in existence at the time of disclosure;

(c)        is disclosed with the prior written approval of the discloser;

(d)        was independently developed by the receiver without any use of the Confidential Information and by employees or other agents of (or independent contractors hired by) the receiver who have not been exposed to the Confidential Information; ·

(e)        becomes known to the receiver, without restriction, from a source other than the discloser without breach of this Agreement by the receiver and otherwise not in violation of the discloser's rights;

(f)        is disclosed by the discloser to a third party without restrictions similar to those contained in this Agreement; or

(g)        is disclosed pursuant to the order or requirement of a court, administrative agency, or other governmental body, provided, however, that the receiver shall provide prompt notice thereof to enable the discloser to seek a protective order or otherwise prevent such disclosure.

Section 7.3    Nondisclosure Agreements.    Each party shall use commercially reasonable efforts, including, but not limited to, the execution of proprietary non-disclosure agreements with employees and consultants, and legal action, to enforce compliance with the provisions of this Article 7 by its directors, officers, employees, and any third party having access to the other party's Confidential Information.

12

McKessonCSA0012

USA APP000012

Section 7.4    <u>Remedies</u>. Unauthorized use by either party of Confidential Information provided to it by the other party hereunder shall diminish the value to the other party of such information. Therefore, if either party breaches any of its obligation with respect to confidentiality and unauthorized use of Confidential Information hereunder, the other party shall be entitled to equitable relief to protect its interest therein, including but not limited to injunctive relief, as well as monetary damages.

Section 7.5    <u>Patient Information Laws</u>. In connection with the development and commercial exploitation of Developed Intangibles, Irish Parent shall, and Irish Parent shall ensure in its agreements with its licensees and their direct and indirect product customers that they and each of them will, license and sell products relating to the Developed Intangibles in compliance with all laws in all applicable jurisdictions pertaining to patient information, including Health Insurance Portability and Accountability Act of 1996 (HIPAA) in the U.S. and similar laws and regulations elsewhere throughout the world, including but not limited to their provisions for a "chain of trust".

## ARTICLE 8

## TERMINATION

Section 8.1    <u>Term</u>. The term of this Agreement shall be for ten (10) years from the date of this Agreement and shall automatically be renewed for additional one-year terms thereafter (the "<u>Term</u>"), unless either Baker APS or Irish Parent notifies the other party not less than sixty (60) days prior to the expiration of the then-current term, that it desires to terminate the Agreement.

Section 8.2    <u>Effect of Termination</u>. Notwithstanding the termination of this Agreement, the provisions of Article 4 (Statement of Development Activities; Payment of Cost Share), Article 5 (Developed Intangibles), Section 6.5 (Bearing of Risks; No Assurance of Success), Article 7 (Confidential Information), this Article 8 (Termination) and Article 9 (Miscellaneous) shall survive. Upon any termination of this Agreement, no party shall relinquish any of its rights to Developed Intangibles acquired hereunder as it exists on such termination date but shall have no ownership, rights, or license to Intangibles subsequently created or developed by the other party.

## ARTICLE 9

## MISCELLANEOUS

Section 9.1    <u>Baker APS Intangibles</u>. The parties hereto acknowledge that Baker APS and Irish Parent have entered into a license agreement whereby Baker APS licensed to Irish Parent certain Baker APS intangibles.

Section 9.2    <u>Assignment</u>. No party may assign its rights or obligations under this Agreement without the prior written consent of the other party, and any purported assignment without such consent shall have no force or effect. Notwithstanding the foregoing provisions, Irish Parent may assign its rights under this Agreement to any Affiliate of Irish Parent in which Irish Parent holds an ownership interest greater than 50%; *provided, however,* that Irish Parent

13

McKessonCSA0013

USA APP000013

shall remain obligated to make all payments due hereunder by such Affiliate. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the respective parties hereto and their successors and assigns.

Section 9.3    Waiver. Any waiver by any party of any default by the other hereunder shall not be deemed to be a continuing waiver of such default or a waiver of any other default or of any of the terms and conditions of this Agreement.

Section 9.4    Amendments. The terms and conditions of this Agreement may not be superseded, modified, or amended except in writing stating that it is such a modification and signed by an authorized representative of each party hereto.

Section 9.5    Governing Law. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York, USA applicable to contracts to performed solely within the State of New York exclusive of conflict of law provisions. Each of the parties agrees that the federal or state courts located in the State of New York shall have exclusive jurisdiction to hear and determine any actions or proceedings that may arise out of or in connection with this Agreement. The parties hereby irrevocable submit to exclusive personal jurisdiction in such courts.

Section 9.6    Dispute Resolution.

(a)    Any claim arising out of or relating to this Agreement or its subject matter or any right or obligation created by this Agreement ("Dispute") shall be resolved in accordance with this Section 9.6. The party asserting the Dispute shall give prompt notice to the other party describing the Dispute in reasonable detail ("Dispute Notice"). Each party shall not commence court proceedings against the other party relating to a Dispute. Promptly after receipt of the Dispute Notice, the parties shall negotiate in good faith to resolve the Dispute.

(b)    If the Dispute has not been resolved within twenty (20) days after receipt of the Dispute Notice, then either party, by notice to the other party, may refer the Dispute for exclusive, binding and final resolution by arbitration conducted by the American Arbitration Association in accordance with its Commercial Arbitration Rules and the United States Arbitration Act. The arbitration shall be conducted by a single arbitrator selected jointly by the parties, or selected by the American Arbitration Association if the parties fail to agree on an arbitrator within a reasonable period. In the reasonable discretion of the arbitrator, either party may conduct discovery in accordance with the evidentiary and civil codes of procedure prescribed by New York law. A party may enter judgment on the award rendered by the arbitrators in any court having jurisdiction.

(c)    Notwithstanding this Section 9.6 above, in connection with a breach of a party's confidentiality obligations under this Agreement, the other party may seek injunctive relief in any court of competent jurisdiction; provided that, the ultimate merits of the dispute are intended to be resolved through arbitration as provided above.

Section 9.7    Attorneys' Fees. The prevailing party in any legal actions brought by one party against the other shall be entitled, in addition to any other rights and remedies it may have,

14

McKessonCSA0014

USA APP000014

to reimbursement for its expenses incurred thereby, including court costs and reasonable attorneys' fees.

Section 9.8    Complete Agreement.  This Agreement constitutes the entire agreement between the parties as to the subject matter hereof, and supersedes and replaces all prior to contemporaneous agreements, written or oral, regarding such subject matter.

Section 9.9    Notices.  Any and all notices, requests and demands permitted or required to be made under this Agreement shall be in writing (including by facsimile) and, unless otherwise expressly provided, shall be deemed to have been duly given or made (i) when delivered by hand, (ii) five (5) business days after being deposited in the mail, certified mail and postage prepaid, (iii) one (1) business day following timely delivery to a nationally recognized overnight courier service, or (iv) in the case of facsimile notice, when sent and electronically confirmed, addressed as follows, or to such other address as may be hereafter notified by the respective parties hereto:

If to:

Baker APS
McKesson Automation Systems Inc.
700 Waterfront Drive
Pittsburgh, PA 15222
Attn:  General Counsel

If to:

Irish Parent
McKesson Information Solutions Holdings Ltd.
c/o Codan Services, Limited
Clarendon House
2 Church Street, P.O. Box HM 1022
Hamilton, Bermuda
Attn: Company Secretary

Section 9.10    Independent Contractors.  This Agreement does not create a principal or agent, employer or employee, partnership, joint venture, or any other relationship except that of independent contractors between the parties.  Nothing contained herein shall be construed to create or imply a joint venture, principal and agent, employer or employee, partnership, or any other relationship except that of independent and contractors between the parties, and neither party shall have any right, power or authority to create any obligation, express or implied, on behalf of the other in connection with the performance hereunder.

Section 9.11    Headings; Counterparts.  Headings to Sections of this Agreement are to facilitate reference only, do not form a part of this Agreement, and shall not in any way affect the interpretation hereof.  This Agreement may be executed in two (2) or more English language counterparts or duplicate originals, all of which shall be regarded as one and the same

15

McKessonCSA0015

USA APP000015

instrument, and which shall be regarded as one and the same instrument, and which shall be the official and governing version in this interpretation of this Agreement.

Section 9.12    Partial Invalidity.  If any provision in this Agreement shall be found or be held to be invalid or unenforceable in any jurisdiction in which this Agreement is being performed, then such provision shall be stricken and the remainder of this Agreement shall remain in full force and effect.

Section 9.13    Force Majeure.  If the performance of any part of this Agreement by either party, or of any obligation under this Agreement, is prevented, restricted, interfered with or delayed by reason of any cause beyond the reasonable control of the party liable to perform, unless conclusive evidence to the contrary is provided, the party so affected shall, on giving written notice to the other party, be excused from such performance to the extent such prevention, restriction or delay, provided that the affected party shall use its reasonable best efforts to avoid or remove such causes of nonperformance and shall continue performance with the utmost dispatch whenever such causes are removed.  When such circumstances arise, the parties shall discuss what, if any, modification of the terms of this Agreement may be required in order to arrive at an equitable solution.

(Remainder of this page intentionally blank.)

16

McKessonCSA0016

USA APP000016

IN WITNESS WHEREOF, the parties have caused this Cost Sharing Agreement to be signed as of the date set forth above.

McKESSON AUTOMATION SYSTEMS INC.

By: _____

Name:

Title:

McKESSON INFORMATION SOLUTIONS HOLDINGS LTD.

By: _____

Name:

Title:   Director

17

McKessonCSA0017

USA APP000017